# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 24-649V**

| | |
|---|---|
| NANCY SMACCHI,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: July 28, 2026 |

*Patrick Dougherty, Dougherty, Leventhal & Price, Kingston, PA, for Petitioner.*

*Tyler King, U.S. Department of Justice, Washington, DC, for Respondent.*

**DECISION AWARDING DAMAGES**[1]

On April 24, 2024, Nancy Smacchi filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by a tetanus diphtheria and pertussis ("Tdap") vaccine administered on July 22, 2022. Petition at 1. A ruling on entitlement issued March 5, 2025, finding that petitioner was entitled to compensation. ECF No. 19. But the parties were unable to informally resolve damages, so they agreed instead to submit this dispute for resolution at an expedited "Motions Day" hearing, which took place on June 26, 2026

For the reasons set forth below, I find that Petitioner is entitled to **$71,840.05** in damages (consisting of $70,000.00 for actual pain and suffering, plus $1,840.05 for out-of-pocket expenses).

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Relevant Procedural History

Following the ruling on entitlement, the parties were unable to informally resolve damages. Petitioner filed a Motion for a Ruling on the Record regarding damages on November 14, 2025. Petitioner's Motion for Ruling on the Record Regarding Damages ("Mot."), ECF No. 33. On December 12, 2025 Respondent filed a Response. Respondent's Response to Petitioner's Damages Brief ("Resp."), ECF No. 34.

## II. Relevant Factual History

On July 22, 2022, Petitioner received a Tdap vaccine in her right shoulder. ECF No. 1-4 at 70.[3] Petitioner first reported shoulder pain on July 25, 2022, and described her pain as severe. She was prescribed an oral steroid. ECF No. 1-7 at 8.

On August 2, 2022, Petitioner saw a pain management specialist, Dr. David Janerich, for shoulder pain. ECF 1-8 at 4. Her pain was rated as 4/10 at best, 8/10 at worst. She also showed reduced strength and decreased range of motion.

Dr. Janerich administered a steroid injection on October 11, 2022 (ECF No. 1-8 at 11), and ordered MRIs for August 4, 2022 (ECF No. 1-9 at 34), and January 10, 2023. ECF No. 1-8 at 37-38. The earlier MRI showed prominent bursal fluid accumulation with intrinsic debris resulting in prominent bursitis and a degenerative nondisplaced labral tear. The later MRI showed near complete recovery. *Id.* at 37.

Petitioner attended 21 physical therapy ("PT") sessions between August 16 and November 1, 2022. By November, Petitioner showed improvement, increased range of motion, and declined to undergo manipulation under anesthesia. ECF No. 1-10 at 93. She returned for additional PT in January 2023, and attended 21 additional sessions between January 18 and September 7, 2023. At her last visit on September 7, 2023, Petitioner had reportedly regained 70% of her prior functional ability. ECF No. 1-10 at 6-8.

On October 24, 2023, Petitioner was again examined by Dr. Janerich. Ex. 6 at 31-44. His diagnosis was adhesive capsulitis of the right shoulder. *Id.* He recommended that Petitioner resume PT and take acetaminophen as needed. ECF No. 1-8 at 31.

Petitioner returned to Dr. Janerich on January 31, 2025 (more than a year since her prior visit). ECF No. 21 at 5-7. Dr. Janerich noted that "[t]here has been improvement

[3] Petitioner filed multiple exhibits duplicating the use of certain exhibit numbers and failed to include exhibit numbers on each page. See ECF No. 1 (referencing as attachments Exs. 1-11), ECF No. 22 (attaching and re-using Ex. 1), ECF No. 31 (containing another Ex. 1), ECF No. 32 (attaching new Exs. 1-4). To avoid confusion, the ECF number and specific page numbers are cited in referencing Petitioner's records.

since [the] prior examination in terms of [range of motion" but petitioner was still experiencing "palpable crepitus and clicking with shoulder circumduction." *Id.* at 7. Dr. Janerich advised petitioner to undergo an MR arthrogram to rule out labral tear, continue her HEP, and take Tylenol. *Id.*

On March 17, 2025, Petitioner underwent a third MRI of her right shoulder. ECF No. 32-3 at 12. The MRI showed evidence of a distal tear of the supraspinatus insertion with adjacent bursitis and noted "[t]hese findings are new since the patient's prior study," which had shown no evidence of a rotator cuff tear. *Id.*; see also ECF No. 1-8 at 37-38 (MRI results from January 10, 2023 showing "[n]o evidence of rotator cuff or labral tear").

Petitioner began a third course of PT in 2025 for "symptoms consistent with RTC tendonitis/SA bursitis with residual weakness/instability due to chronic complaint of pain. ECF No. 32-4 at 32. She attended 10 sessions between March 26 and May 6, 2025.*Id.* at 7-34. The treatment records reflect that petitioner's shoulder pain, weakness, and functional deficits were attributed to "a chronic supraspinatus tear," but there was no mention of the date of onset or cause of this condition. *Id.* at 32. The records list two diagnoses: incomplete rotator cuff rupture of right shoulder "not specified as traumatic" and pain in right shoulder. *See, e.g.*, *id.* at 29.

On April 8, 2025, Petitioner underwent a functional capacity evaluation, drafted by Dr. William Prebola. ECF No. 32-2 at 3-14. The report states that Petitioner "suffers a 20% permanent partial disability status and has significant functional capacity residual disability. *Id.* at 3. Petitioner's condition was solely attributed to her SIRVA. *Id.* at 5. However, it appears that the report relied solely on Petitioner's reported history. Further, there is no indication that the report includes a review Petitioner's medical records, address the January 2023 MRI showing near complete resolution of her condition, or the more recent MRI showing a new rotator cuff tear.

## III. Damages

Petitioner is seeking $75,000.00 for past pain and suffering, $50,000.00 for future pain and suffering, and $2,480 for out-of-pocket expenses. Respondent argues a lump sum of $70,000.00 is appropriate for pain and suffering, and disputes $640.00 of the requested expenses. Resp. at 19.

After listening to the arguments of both sides, I orally announced my ruling on damages constituting my findings of fact and conclusions of law, pursuant to Section 12(d)(3)(A), at the conclusion of the June 26, 2026 hearing. An official recording of the proceeding was taken by a court reporter. I hereby fully adopt and incorporate that oral ruling as officially recorded.

### A. Past Pain and Suffering

The evidence indicates that Ms. Smacchi suffered a moderate SIRVA for approximately 15 months. She did not delay in seeking medical attention, and her treatment consisted of 42 physical therapy sessions and diagnostic testing. Her pain was described as 4-8/10 initially. ECF 1-8 at 4. However, six months post-vaccination her pain was described as 1-5/10 (ECF No. 1-8 at 22) and a repeat MRI showed near complete resolution of the bursitis by January of 2023. ECF No. 1-8 at 37-38. Her treatment during that period consisted of 42 physical therapy sessions, one steroid injection, and diagnostic testing.

The parties are not that far off with regard to past pain and suffering. Respondent cites three cases that are fairly comparable, awarding between $67,000.00 and $75,000.00 for pain and suffering.[4] The *Bartholomew* case (awarding $67,000 for pain and suffering) is the closest, albeit involving a less severe injury. That petitioner attended 41 PT sessions and had one cortisone injection, similar to Ms. Smacchi. However, the reported pain was slightly less severe in *Bartholomew* (0-8 and 1-4 out of 10), and the treatment occurred over eight months, as opposed to 15 months in Petitioner's case.

Balancing the severity of Petitioner's SIRVA injury, the course of treatment, and based on the record as a whole, I find that **$70,000.00** for actual pain and suffering is reasonable and appropriate in this case.

### B. Future Pain and Suffering

I do not include any component of damages for future pain and suffering. Such an award is appropriate only in cases where the claimant preponderantly shows some degree of an ongoing medical symptom that exceeds the usual residual effects of a SIRVA (which are unpredictable and can wane or disappear)_ – such as where she has suffered a permanent disability (as corroborated by medical record evidence) or "other extenuating circumstances that justify inclusion of a future component." *Accetta v. Sec'y of Health & Hum. Servs.*, No. 17-1731V, 2021 WL 1718202, at *5 (Fed. Cl. Spec. Mstr. Mar. 31, 2021). Special masters have declined to award a future pain and suffering component in the absence of indicia of that level of ongoing severity. *See,* e.g., *Reed v. Sec'y of Health & Hum. Servs.,* No. 16-1670V, 2019 WL 1222925, at *17 (Fed. Cl. Spec.

[4] *Bartholomew v. HHS,* No. 18-1579V, 2020 WL 3639805 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $67,000 for pain and suffering); *Alcantara v. HHS,* No. 20-990V, 2022 WL 2800868 (Fed. Cl. Spec. Mstr. June 10, 2022) (awarding $70,000 for pain and suffering); *Miller v. HHS,* No. 20-0604V, 2022 WL 3641716 (Fed. Cl. Spec. Mstr. July 22, 2022) (awarding $75,000 for pain and suffering).

Mstr. Feb. 1, 2019) (noting there should be “adequate medical evidence demonstrating the likelihood that petitioner’s shoulder injury, more likely than not, will extend well into the future and . . . indicating that [a] shoulder injury is permanent”).

Petitioner has not established that the sequela of her SIRVA continued beyond October 24, 2023, sufficient to justify a future pain and suffering component. By that October, she reported some lingering symptoms but had shown significant improvements. Further, Petitioner’s doctor advised at that time that there was no need for additional treatment other than pain medication and participation in a home exercise program. ECF 1-8 at 32.

Petitioner subsequently delayed follow-up treatment for 15 months, or until January 2025, suggesting a problem that had either resolved or was minimal in impact on her life. Notably, when Petitioner did return to seek care for shoulder pain, her injury was attributed to a chronic supraspinatus tear and a repeat MRI noted evidence of a distal tear, which was not evident on earlier MRIs. ECF No. 1-8 at 37-38; ECF No. 32-4 at 7-34. Thus, there is evidence of an alternative cause for these later symptoms.

Petitioner nevertheless alleges that the treatment in 2025 was linked to her SIRVA. *See* ECF No. 32-2 at 5 (functional capacity evaluation describing Petitioner’s injury and treatment). However, Program determinations are not based solely on witness statements. *Clavio v. Sec’y of Health & Hum. Servs.*, No. 17 1179V, 2020 WL 1672956, at *7 (Fed. Cl. Spec. Mstr. Mar. 11, 2020) (finding that this Court “cannot make a finding of fact based on witness testimony alone; the testimony must have some form of corroborating evidence”). Rather, they must have some evidentiary corroboration – which is lacking here. The functional capacity evaluation from 2025 which links the SIRVA to her later-in-time treatment appears to be based solely on Petitioner’s *reported* history, and not on a review of her medical records. In addition (and as is often emphasized in Program damages determinations), lingering SIRVA symptoms are not the same as permanent deficits, even if the claimant subjectively reports experiencing some ongoing issues. Without objective medical proof documenting or corroborating these kind of statements, a future pain and suffering award is not warranted.

### C. Out-of-Pocket Expenses

Petitioner submitted documentation of past unreimbursed expenses “incurred as a result of the [SIRVA]” totaling $2,480.05. See ECF Nos. 22, 31. The receipts attached to these filings reflect treatment in both 2022-23 and 2025. ECF Nos. 22-1, 31-2. Respondent asserts that any shoulder-related treatment received in 2025 was not related to her July 2022 SIRVA. As discussed above, Petitioner has not established that the

sequela of her SIRVA continued beyond October 24, 2023. Therefore, Petitioner shall be awarded $1,840.05 in past unreimbursed expenses, covering only the treatment received in 2022-23. ECF No. 22-1.

## Conclusion

**For all of the reasons discussed above, and based on consideration of the record as a whole, I award Petitioner a lump sum payment of $71,840.05 (consisting of $70,000.00 for actual pain and suffering and $1,840.05 for out-of-pocket expenses) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.**

**This amount represents compensation for all items of damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.**[5]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.